AO89 (Rev. 7/95) Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT

DISTRICT OF ___CONNECTICUT___

UNITED STATES OF AMERICA

V.

RONALD E. FERGUSON, ET AL.

**SUBPOENA IN A
CRIMINAL CASE**

Case Number:   3:06CR00137 (PCD)

TO:   AMERICAN INTERNATIONAL GROUP, INC.

☒ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case.  This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE    UNITED STATES DISTRICT COURT<br>141 CHURCH STREET<br>NEW HAVEN, CT 06510* | COURTROOM<br>Hon. Peter C. Dorsey<br>U.S. District Judge |
|---|---|
| | DATE AND TIME<br>September 23, 2006 |

☒ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See Exhibit A

*Pursuant to the Court's Order, production may be made directly to the issuing attorney indicated below.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| Kevin F. Rowe<br>(By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
Douglas I. Koff, Esq. (phv 01207)
Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY 10281
(212) 504-6372

EXHIBIT A

### I.   **Instructions**

For the purposes of compliance with this Subpoena:

1.      You may have already produced documents responsive to this subpoena in response to requests or subpoenas from the Department of Justice or the U.S. Attorney's Office for the Eastern District of Virginia. To the extent you have done so, you do not need to provide these materials here. However, to the extent that there are additional responsive documents, not already produced to the agencies identified above, you must produce those documents.

2.      You may have already produced documents responsive to this subpoena in response to requests or subpoenas from the Northeast Regional Office of the U.S. Securities & Exchange Commission. To the extent that you have done so, you may satisfy the requirements of this subpoena by identifying the documents already produced by Bates number or other control number. However, to the extent that there are additional responsive documents, not already produced to the agencies identified above, you must produce those documents.

3.      The documents requested herein encompass all documents which are in your possession, custody or control, or in the possession, custody or control of any American International Group, Inc.("AIG") affiliate or subsidiary, and are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the numbered paragraphs or categories of particular requests. If there are no documents responsive to a particular numbered paragraph and/or category, so state in writing.

4.      All documents produced from inside the United States are to be accompanied with a certification under Rule 902(11) of the Federal Rules of Evidence,

substantially in the form of the certification attached hereto. All documents produced from outside the United States are to be accompanied with a certification under Title 18, United States Code, section 3505, substantially in the form of the certification attached hereto.

5.      For each responsive document withheld under a claim of privilege, the following information shall be provided:

(a)      whether the document has been previously provided to any outside party in full or in redacted form, including but not limited to the Department of Justice, any U.S. Attorneys' Offices, the U.S. Securities & Exchange Commission, the U.S. Postal Inspection Service, the Federal Bureau of Investigation, the Office of the Attorney General of New York, the New York State Department of Insurance, or parties in a private lawsuit, mediation, or arbitration;

(b)      the nature of the privilege (including work product) that is being claimed and, if applicable, the state rule or law governing such claim;

(c)      the identities of all persons who have or have had access, or purport to have or have had access, to said document;

(d)      the type of document (i.e., letter, memorandum, etc.);

(e)      the general subject matter of the document;

(f)      the date of the document; and

(g)      such information as is sufficient to identify the document including, where appropriate, the document author(s), addressee(s), and where not apparent, the relationship between the author(s) and addressee(s).

6.      All documents produced shall be provided in their entirety notwithstanding the fact that portions thereof may contain information not requested. All interim as well as final versions of the document shall be produced, and all versions or copies

-3-

that are not identical to the original or other produced copy of the document, whether due to handwritten notations, modifications, changes, amendments, revisions or otherwise, shall be produced.

7.      If any requested document has been destroyed or discarded, or is no longer in existence, that document is to be identified by stating:

        (a)     its date of destruction or discard;

        (b)     the manner and reason for its destruction or discard; and

        (c)     the identity of the document's last custodian and of each person responsible for the document's destruction or unavailability.

8.      If any requested document was, but no longer is in your possession, state all circumstances of its disposition and whether any copy is in the possession, custody or control of some other person or corporation and indicate why the document or a copy cannot be produced.

9.      Where anything has been deleted from a document produced:

        (a)     specify the nature of the material deleted;

        (b)     specify the reason(s) for the deletion; and

        (c)     identify the person(s) responsible for the deletion.

10.     If any request herein cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

11.     The requests shall be deemed continuing so as to require further and prompt supplemental production if, between the date hereof and the time of hearing and/or trial, any additional documents come into your possession, custody or control or the

-4-

possession, custody or control of your agents or representatives including but not limited to, any attorneys, accountants and advisors.

12.   All references to the singular shall be deemed to include the plural, and all references to the plural shall be deemed to include the singular.

13.   All references to masculine gender shall be deemed to include the feminine and the neuter.

## II.   **Definitions**

Unless otherwise noted, the terms set forth below are defined as follows:

1.   "Agreement" shall mean any agreement, arrangement, or mutual understanding, whether written or oral, including any and all drafts or amendments, schedules or exhibits, or additional agreements referenced therein or attached thereto.

2.   "AIG Restatements" means those portions of any AIG financial statements or other AIG filings with the U.S. Securities & Exchange Commission Form, as filed with the U.S. Securities & Exchange Commission at any time in 2005 or 2006, which discuss or relate to changes in accounting to prior years' financial statements or other filings with the U.S. Securities & Exchange Commission.

3.   "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

4.   "Any" includes "all" and vice versa.

5.   "Companies" shall mean AIG, Berkshire Hathaway, Inc. ("Berkshire Hathaway"), General Reinsurance Corp. ("GenRe"), General Re Corp. ("GRN"), Kölnische Ruckversicherungs-Gesellschaft AG ("Cologne Re"), Cologne Reinsurance Company (Dublin) Limited ("CRD"), Hartford Steam Boiler Inspection and Insurance Company ("HSB"),

-5-

National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("NUFIC") and any predecessor, successor, affiliate, subsidiary, or parent thereto, collectively or singly, and their present or former officers, directors, members, employees, agents, representatives, attorneys, consultants, advisors (financial or otherwise), investment bankers, and all other persons (legal or natural) acting or purporting to act on their behalf.

6.     "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether orally or in writing or by any other means or medium.

7.     "Concerning" shall mean relating to, referring to, describing, evidencing or constituting.

8.     "Document" shall have the broadest meaning permitted by the rules of the Court, and should include all documents within your possession, custody, or control or for which you have the right or ability to request, review, or access, including but not limited to all originals, copies (if the originals are not available), non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise), and drafts, whether printed or recorded (through sound, video, or other electronic, magnetic, or digital recording system), or reproduced by hand, and including but not limited to letters, correspondence, telegrams, telexes, agency memoranda, intermediary memoranda, other memoranda, records, summaries of personal conversations or interviews, minutes or records or notes of meetings of conferences, note pads, notebooks, postcards, "Post-It" notes, stenographic notes, opinions, or reports of advisors or consultants, opinions, or reports of experts, projections, financial or statistical statements or compilations, analyses, confirmations, publications, articles, books, pamphlets, manuals, provisions, desk reviews, audits, rate sheets, circulars, microfilm, microfiche, reports, studies, logs, surveys, diaries,

maps, charts, graphs, bulletins, photostats, speeches, data sheets, pictures, photographs, illustrations, blueprints, films, drawings, plans, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-produced interpretations or transcriptions thereof, electronically transmitted messages ("e-mail") (including any information contained in any computer, even if not yet printed out), voice mail messages, interoffice communications, advertising, packaging, and promotional materials and any other writings, papers, and tangible things of whatever description whatsoever.

9.      "GAAP" shall mean generally accepted accounting principles.

10.      "HSB Commutation" shall mean the commutation endorsement and release agreement between GenRe and HSB, executed December 21, 2001, in which GenRe reimbursed HSB by $7.5 million.

11.      "HSB Transactions" shall mean all reinsurance contracts between HSB and GenRe or any affiliate of GenRe, from 1995 through 2001, including the 13 such contracts that made up the HSB experience account balance that exceeded $30 million, the HSB Commutation, and the NUFIC Retrocession.

12.      "Including" shall mean including but not limited to.

13.      "LPT" shall mean the $500 million Loss Portfolio Transfer between CRD and NUFIC that was divided into two tranches of $250 million each in the fourth quarter of 2000 and the first quarter of 2001, as well as any associated transfer of funds, including but not limited to those that took place in 2001 between GenRe, NUFIC, and HSB.

14.      "NUFIC Retrocession" shall mean the excess of loss retrocessional agreement between GenRe and NUFIC, executed December 28, 2001, in which GenRe paid NUFIC $9.1 million.

-7-

15.    "Person" or "persons" shall mean natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

16.    "Underlying Cedents" shall mean the insurers or reinsurers that ceded the Underlying Loss Portfolios to CRD.

17.    "Underlying Loss Portfolios" shall mean any or all of the underlying loss reserve portfolios or other reinsurance agreements that were ceded to NUFIC pursuant to the LPT, defined in the LPT contracts as the "Original Reinsurance Contracts," and detailed in Schedule A annexed thereto, including but not limited to any reinsurance (other than that which was ceded to NUFIC), which was purchased at any time by CRD covering any portion of the liabilities CRD had assumed under such underlying loss reserve portfolios or other reinsurance agreements.

18.    "U.S. GAAP Statements" shall mean any or all financial statements filed in accordance with generally accepted accounting principles, including but not limited to all SEC Form 10-Ks and SEC Form 10-Qs.

19.    "U.S. Statutory Financial Statements" shall mean the quarterly and annual financial reports filed by, or on behalf of, insurance and reinsurance companies with state insurance regulatory authorities.

## III.    **Documents Subpoenaed**

For the period January 1, 2000 through the present, produce the following:

1.    All documents and communications concerning the LPT or HSB Transactions, including but not limited to:

(i)    all documents and communications concerning the origination, formation, negotiation, structure, documentation, pricing, or accounting of, or any

-8-

actuarial or other risk analysis performed in connection with, the LPT or HSB Transactions;

(ii)     all documents and communications concerning the motives, justifications, or reasons why any of the Companies or their executives sought or agreed to the LPT, HSB Commutation or NUFIC Retrocession;

(iii)    all documents and communications concerning any connection between the LPT and any of the HSB Transactions;

(iv)     all documents and communications concerning any money owed by GenRe to HSB concerning any of the HSB Transactions;

(v)      all documents and communications concerning any intention or decision by AIG or HSB to commute, cancel, terminate, or novate any of the HSB Transactions, which was expressed or reached independent of any consideration of any aspect of the LPT;

(vi)     all documents and communications concerning the evaluation of risk transfer in the LPT from an accounting, legal, actuarial or insurance standpoint;

(vii)    all documents or communications concerning anyone's knowledge of how any of the Companies accounted for or intended to account for the LPT on a U.S. or European GAAP or statutory accounting basis, or how any of the Companies advised anyone they accounted for or intended to account for the LPT on a U.S. or European GAAP or statutory accounting basis;

(viii)   all documents and communications concerning the applicability of any part of FAS 113, or SSAP 62 to the LPT;

-9-

(ix)    all documents and communications concerning the materiality of the LPT for purposes of reserve analysis, audit planning, audit testing, U.S. or European GAAP or statutory accounting, or securities laws or regulations;

(x)    all documents and communications concerning fees, premiums, or similar compensation or consideration in connection with the LPT or HSB Transactions, including but not limited to the flow or payment of such amounts, rebates, refunds, or return of such amounts, or other benefits (including but not limited to participation on favorable terms or increased percentage in other transactions) in connection with the LPT or HSB Transactions; and

(xi)    all documents and communications concerning any losses related to the LPT.

2.    All documents and communications concerning the Underlying Loss Portfolios, including but not limited to:

(i)    all documents and communications concerning the origination, formation, negotiation, structure, documentation, pricing, or accounting of, or any actuarial or other risk analysis performed in connection with, the Underlying Loss Portfolios;

(ii)    all documents and communications concerning the flow of funds, fees, premiums, or other consideration, benefits or losses related to the Underlying Loss Portfolios;

(iii)    all communications, emails, and correspondence with Underlying Cedents;

(iv)    all documents and communications concerning the underwriting, claims, and accounting files for or related to the Underlying Loss Portfolios;

-10-

(v)      all documents and communications concerning reserves, (including but not limited to any summary or analysis of reserves), and risk transfer (including but not limited to any summary or analysis or risk transfer) for the Underlying Loss Portfolios; and

(vi)     all documents and communications concerning the actual development (adverse or favorable) of the loss reserves associated with the Underlying Loss Portfolios (from the date of each Underlying Loss Portfolio's inception through the present.)

3.      All documents and communications concerning the public's, analysts', or the equity or financial markets' view, perception or opinion regarding the adequacy of AIG's reserves for each quarter from the first quarter of 2000 through the fourth quarter of 2004, including but not limited to:

(i)      all documents and communications concerning AIG's internal deliberations and concerns about how investment analysts, researchers, and investors viewed the adequacy of AIG's loss reserves and how to respond to such concerns.

4.      All documents and communications concerning the disclosure of, reference to, or mention of, the LPT or HSB Transactions in any document filed or to be filed under either the federal securities laws or state insurance laws, rules, and regulations, including but not limited to:

(i)      all documents and communications concerning the effects of any disclosures of the LPT or HSB Transactions on any line item in either the U.S. GAAP Statements or U.S. Statutory Financial Statements and supporting schedules;

(ii)     all communications concerning the LPT or HSB Transactions with the U.S. Securities & Exchange Commission, the Financial Accounting Standards Board, the National Association of Securities Dealers, the National Association of Insurance Commissioners, the New York Stock Exchange, state insurance regulatory authorities and any rating agencies; and

(iii)    all documents concerning the filing, distribution, forwarding, or sending of U.S. Statutory Financial Statements to any person or entity or the date of such filing, distribution, forwarding, or sending.

5.      All documents and communications concerning the portion of any AIG Restatement which addresses:

(i)      the LPT or HSB Transactions; or

(ii)     the basis for AIG's Restatement of the year 2000 and 2001 general insurance or property & casualty insurance loss reserves.

6.      All documents and communications concerning anyone's concerns that they were not or had not been provided with accurate or complete information concerning the LPT or HSB Transactions, or concerning the views or inquiries of the Companies' internal or outside auditors, accountants, or counsel as to the adequacy of each of the Companies' internal controls and procedures.

7.      All documents concerning communications with law enforcement authorities or insurance or other regulators, including but not limited to the Department of Justice, any U.S. Attorneys' Offices, the U.S. Securities and Exchange Commission, the U.S. Postal Inspection Service, the Office of the Attorney General of New York, or the New York State Department of Insurance concerning their respective investigations, including but not limited to:

      (i)     all discussions concerning remedial steps, discipline or termination of employees and officers; modifications to internal policies, procedures, practices, and controls; or potential criminal, civil, or administrative enforcement actions and the resolution of such actions;

      (ii)    copies of all subpoenas or document requests and any correspondence or communication concerning the subpoenas or document requests; and

      (iii)   copies of all privilege logs or redaction logs produced in response to any investigation concerning the LPT or HSB Transactions.

     8.    All documents and communications concerning knowledge of the LPT or HSB Transactions (including but not limited to the accounting for them), the decrease in AIG GAAP loss reserves in the third quarter of 2000, the increase in AIG GAAP loss reserves in the fourth quarter of 2000, or the increase in AIG GAAP loss reserves in the first quarter of 2001 by any of the following individuals: Maurice "Hank" Greenberg, Christian Milton, Howard "Howie" Smith, Warren E. Buffett, Ronald E. Ferguson, Richard Napier, Joseph P. Brandon, Elizabeth "Betsy" Monrad, Tom M. Kellogg, Tad Montross, Lee R. Steeneck, Robert Graham, James Sabella, Margaret Dennehy, Peter Gerhardt, John Byrne, Christopher P. Garand, Milan Vukelic, John B. Houldsworth, Philip Garrison, Michael Castelli, Jay Morrow, Annette Morrill, Ronnie Carroll, Frank Douglas, Vincent Cantwell, Marcy Shamah, Robert Jacobson, Robert McGowan, Robert Beier, John Blumenstock, Thomas Tizzio, Saul Basch, William Heckles, Joseph Umansky, David Wessel, Jerry Borelli, Joseph Brescia, Jackie Britt, Anthony Caruana, Larry Golodner, Bruce Osterman, Alfonso Pisani, Jeff Shattin, or Kenneth Simpson.

-13-

9.      All documents and communications concerning any communications between Maurice "Hank" Greenberg and Warren E. Buffett in years 2000 and 2001.

10.      All documents concerning all actual, proposed, or contemplated alteration, destruction, or modification of any documents concerning any of the items listed in 1 through 9 above, including but not limited to all policies and procedures concerning document preservation, destruction, modification, recycling, or maintenance.

## CERTIFICATION PURSUANT TO FED. R. EVID. 902(11)

I, _____, am a _____,
       [name]                                       [title]

of _____. As such, I am duly authorized custodian of
       [company]

records. I hereby certify that the attached documents, which are:

[general description]

are records that were made, at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; that such records were kept in the course of a regularly conducted business activity; that the business activity made such records as a regular practice; and that such records are [originals] [duplicates of originals].
                                                         [strike one]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____
         [City, State]

_____ , _____
   [Date]

_____
                          [signature]

_____
                          [printed name]

AO89 (Rev. 7/95) Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT

DISTRICT OF    CONNECTICUT

UNITED STATES OF AMERICA

V.

RONALD E. FERGUSON, ET AL.

**SUBPOENA IN A
CRIMINAL CASE**

Case Number:    3:06CR00137(PCD)

TO:   NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PENNSYLVANIA

☑ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case. This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE   UNITED STATES DISTRICT COURT <br> 141 CHURCH STREET <br> NEW HAVEN, CT 06510* | COURTROOM <br> Hon. Peter C. Dorsey <br> U.S. District Judge |
|---|---|
| | DATE AND TIME <br> September 23, 2006 |

☑ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See Exhibit A

*Pursuant to the Court's Order, production may be made directly to the
issuing attorney indicated below.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| Kevin F. Rowe <br><br> (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

Douglas I. Koff, Esq. (phv 01207)
Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY 10281
(212) 504-6372

EXHIBIT A

I.   **Instructions**

For the purposes of compliance with this Subpoena:

1.     You may have already produced documents responsive to this subpoena in response to requests or subpoenas from the Department of Justice or the U.S. Attorney's Office for the Eastern District of Virginia. To the extent you have done so, you do not need to provide these materials here. However, to the extent that there are additional responsive documents, not already produced to the agencies identified above, you must produce those documents.

2.     You may have already produced documents responsive to this subpoena in response to requests or subpoenas from the Northeast Regional Office of the U.S. Securities & Exchange Commission. To the extent that you have done so, you may satisfy the requirements of this subpoena by identifying the documents already produced by Bates number or other control number. However, to the extent that there are additional responsive documents, not already produced to the agencies identified above, you must produce those documents.

3.     The documents requested herein encompass all documents which are in your possession, custody or control, or in the possession, custody or control of any National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("NUFIC") affiliate or subsidiary, and are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the numbered paragraphs or categories of particular requests. If there are no documents responsive to a particular numbered paragraph and/or category, so state in writing.

4.     All documents produced from inside the United States are to be accompanied with a certification under Rule 902(11) of the Federal Rules of Evidence,

substantially in the form of the certification attached hereto. All documents produced from outside the United States are to be accompanied with a certification under Title 18, United States Code, section 3505, substantially in the form of the certification attached hereto.

5.    For each responsive document withheld under a claim of privilege, the following information shall be provided:

(a)    whether the document has been previously provided to any outside party in full or in redacted form, including but not limited to the Department of Justice, any U.S. Attorneys' Offices, the U.S. Securities & Exchange Commission, the U.S. Postal Inspection Service, the Federal Bureau of Investigation, the Office of the Attorney General of New York, the New York State Department of Insurance, or parties in a private lawsuit, mediation, or arbitration;

(b)    the nature of the privilege (including work product) that is being claimed and, if applicable, the state rule or law governing such claim;

(c)    the identities of all persons who have or have had access, or purport to have or have had access, to said document;

(d)    the type of document (i.e., letter, memorandum, etc.);

(e)    the general subject matter of the document;

(f)    the date of the document; and

(g)    such information as is sufficient to identify the document including, where appropriate, the document author(s), addressee(s), and where not apparent, the relationship between the author(s) and addressee(s).

6.    All documents produced shall be provided in their entirety notwithstanding the fact that portions thereof may contain information not requested. All interim as well as final versions of the document shall be produced, and all versions or copies

-3-

that are not identical to the original or other produced copy of the document, whether due to handwritten notations, modifications, changes, amendments, revisions or otherwise, shall be produced.

7.     If any requested document has been destroyed or discarded, or is no longer in existence, that document is to be identified by stating:

      (a)     its date of destruction or discard;

      (b)     the manner and reason for its destruction or discard; and

      (c)     the identity of the document's last custodian and of each person responsible for the document's destruction or unavailability.

8.     If any requested document was, but no longer is in your possession, state all circumstances of its disposition and whether any copy is in the possession, custody or control of some other person or corporation and indicate why the document or a copy cannot be produced.

9.     Where anything has been deleted from a document produced:

      (a)     specify the nature of the material deleted;

      (b)     specify the reason(s) for the deletion; and

      (c)     identify the person(s) responsible for the deletion.

10.     If any request herein cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

11.     The requests shall be deemed continuing so as to require further and prompt supplemental production if, between the date hereof and the time of hearing and/or trial, any additional documents come into your possession, custody or control or the

-4-

possession, custody or control of your agents or representatives including but not limited to, any attorneys, accountants and advisors.

12.    All references to the singular shall be deemed to include the plural, and all references to the plural shall be deemed to include the singular.

13.    All references to masculine gender shall be deemed to include the feminine and the neuter.

## II. Definitions

Unless otherwise noted, the terms set forth below are defined as follows:

1.    "Agreement" shall mean any agreement, arrangement, or mutual understanding, whether written or oral, including any and all drafts or amendments, schedules or exhibits, or additional agreements referenced therein or attached thereto.

2.    "AIG Restatements" means those portions of any American International Group, Inc. ("AIG") financial statements or other AIG filings with the U.S. Securities & Exchange Commission Form, as filed with the U.S. Securities & Exchange Commission at any time in 2005 or 2006, which discuss or relate to changes in accounting to prior years' financial statements or other filings with the U.S. Securities & Exchange Commission.

3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

4.    "Any" includes "all" and vice versa.

5.    "Companies" shall mean AIG, Berkshire Hathaway, Inc. ("Berkshire Hathaway"), General Reinsurance Corp. ("GenRe"), General Re Corp. ("GRN"), Kölnische Ruckversicherungs-Gesellschaft AG ("Cologne Re"), Cologne Reinsurance Company (Dublin)

Limited ("CRD"), Hartford Steam Boiler Inspection and Insurance Company ("HSB"), NUFIC and any predecessor, successor, affiliate, subsidiary, or parent thereto, collectively or singly, and their present or former officers, directors, members, employees, agents, representatives, attorneys, consultants, advisors (financial or otherwise), investment bankers, and all other persons (legal or natural) acting or purporting to act on their behalf.

6.    "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether orally or in writing or by any other means or medium.

7.    "Concerning" shall mean relating to, referring to, describing, evidencing or constituting.

8.    "Document" shall have the broadest meaning permitted by the rules of the Court, and should include all documents within your possession, custody, or control or for which you have the right or ability to request, review, or access, including but not limited to all originals, copies (if the originals are not available), non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise), and drafts, whether printed or recorded (through sound, video, or other electronic, magnetic, or digital recording system), or reproduced by hand, and including but not limited to letters, correspondence, telegrams, telexes, agency memoranda, intermediary memoranda, other memoranda, records, summaries of personal conversations or interviews, minutes or records or notes of meetings of conferences, note pads, notebooks, postcards, "Post-It" notes, stenographic notes, opinions, or reports of advisors or consultants, opinions, or reports of experts, projections, financial or statistical statements or compilations, analyses, confirmations, publications, articles, books, pamphlets, manuals, provisions, desk reviews, audits, rate sheets, circulars, microfilm, microfiche, reports, studies, logs, surveys, diaries,

-6-

maps, charts, graphs, bulletins, photostats, speeches, data sheets, pictures, photographs, illustrations, blueprints, films, drawings, plans, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-produced interpretations or transcriptions thereof, electronically transmitted messages ("e-mail") (including any information contained in any computer, even if not yet printed out), voice mail messages, interoffice communications, advertising, packaging, and promotional materials and any other writings, papers, and tangible things of whatever description whatsoever.

  9. "GAAP" shall mean generally accepted accounting principles.

  10. "HSB Commutation" shall mean the commutation endorsement and release agreement between GenRe and HSB, executed December 21, 2001, in which GenRe reimbursed HSB by \$7.5 million.

  11. "HSB Transactions" shall mean all reinsurance contracts between HSB and GenRe or any affiliate of GenRe, from 1995 through 2001, including the 13 such contracts that made up the HSB experience account balance that exceeded \$30 million, the HSB Commutation, and the NUFIC Retrocession.

  12. "Including" shall mean including but not limited to.

  13. "LPT" shall mean the \$500 million Loss Portfolio Transfer between CRD and NUFIC that was divided into two tranches of \$250 million each in the fourth quarter of 2000 and the first quarter of 2001, as well as any associated transfer of funds, including but not limited to those that took place in 2001 between GenRe, NUFIC, and HSB.

  14. "NUFIC Retrocession" shall mean the excess of loss retrocessional agreement between GenRe and NUFIC, executed December 28, 2001, in which GenRe paid NUFIC \$9.1 million.

15.    "Person" or "persons" shall mean natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

16.    "Underlying Cedents" shall mean the insurers or reinsurers that ceded the Underlying Loss Portfolios to CRD.

17.    "Underlying Loss Portfolios" shall mean any or all of the underlying loss reserve portfolios or other reinsurance agreements that were ceded to NUFIC pursuant to the LPT, defined in the LPT contracts as the "Original Reinsurance Contracts," and detailed in Schedule A annexed thereto, including but not limited to any reinsurance (other than that which was ceded to NUFIC), which was purchased at any time by CRD covering any portion of the liabilities CRD had assumed under such underlying loss reserve portfolios or other reinsurance agreements.

18.    "U.S. GAAP Statements" shall mean any or all financial statements filed in accordance with generally accepted accounting principles, including but not limited to all SEC Form 10-Ks and SEC Form 10-Qs.

19.    "U.S. Statutory Financial Statements" shall mean the quarterly and annual financial reports filed by, or on behalf of, insurance and reinsurance companies with state insurance regulatory authorities.

III.    **Documents Subpoenaed**

For the period January 1, 2000 through the present, produce the following:

1.    All documents and communications concerning the LPT or HSB Transactions, including but not limited to:

(i)    all documents and communications concerning the origination, formation, negotiation, structure, documentation, pricing or accounting of, or any

-8-

actuarial or other risk analysis performed in connection with, the LPT or HSB Transactions;

(ii)    all documents and communications concerning the motives, justifications, or reasons why any of the Companies or their executives sought or agreed to the LPT, HSB Commutation, or NUFIC Retrocession;

(iii)    all documents and communications concerning any connection between the LPT and any of the HSB Transactions;

(iv)    all documents and communications concerning any money owed by GenRe to HSB concerning any of the HSB Transactions;

(v)    all documents and communications concerning any intention or decision by AIG or HSB to commute, cancel, terminate, or novate any of the HSB Transactions, which was expressed or reached independent of any consideration of any aspect of the LPT;

(vi)    all documents and communications concerning the evaluation of risk transfer in the LPT from an accounting, legal, actuarial or insurance standpoint;

(vii)    all documents or communications concerning anyone's knowledge of how any of the Companies accounted for or intended to account for the LPT on a U.S. or European GAAP or statutory accounting basis, or how any of the Companies advised anyone they accounted for or intended to account for the LPT on a U.S. or European GAAP or statutory accounting basis;

(viii)    all documents and communications concerning the applicability of any part of FAS 113, or SSAP 62 to the LPT;

(ix)     all documents and communications concerning the materiality of the LPT for purposes of reserve analysis, audit planning, audit testing, U.S. or European GAAP or statutory accounting, or securities laws or regulations;

(x)     all documents and communications concerning fees, premiums, or similar compensation or consideration in connection with the LPT or HSB Transactions, including but not limited to the flow or payment of such amounts, rebates, refunds, or return of such amounts, or other benefits (including but not limited to participation on favorable terms or increased percentage in other transactions) in connection with the LPT or HSB Transactions; and

(xi)     all documents and communications concerning any losses related to the LPT.

2.     All documents and communications concerning Underlying Loss Portfolios, including but not limited to:

(i)     all documents and communications concerning the origination, formation, negotiation, structure, documentation, pricing, or accounting of, or any actuarial or other risk analysis performed in connection with, the Underlying Loss Portfolios;

(ii)     all documents and communications concerning the flow of funds, fees, premiums, other consideration or benefits or losses related to the Underlying Loss Portfolios;

(iii)     all communications, emails, and correspondence with Underlying Cedents;

(iv)     all documents and communications concerning the underwriting, claims, and accounting files for or related to the Underlying Loss Portfolios;

-10-

(v)     all documents and communications concerning reserves, (including but not limited to any summary or analysis of reserves), and risk transfer (including but not limited to any summary or analysis or risk transfer) for the Underlying Loss Portfolios; and

(vi)     all documents and communications concerning the actual development (adverse or favorable) of the loss reserves associated with the Underlying Loss Portfolios (from the date of each Underlying Loss Portfolio's inception through the present.)

3.     All documents and communications discussing the disclosure of, reference to, or mention of, the LPT or HSB Transactions in any document filed or to be filed under either the federal securities laws or state insurance laws, rules, and regulations, including but not limited to:

(i)     all documents and communications reflecting the effects of any disclosures of the LPT or HSB Transactions on any line item in either the U.S. GAAP Statements or U.S. Statutory Financial Statements and supporting schedules;

(ii)     all communications about the LPT or HSB Transactions with the U.S. Securities & Exchange Commission, the Financial Accounting Standards Board, the National Association of Securities Dealers, the National Association of Insurance Commissioners, the New York Stock Exchange, state insurance regulatory authorities and any rating agencies; and

(iii)     all documents discussing the filing, distribution, forwarding, or sending of U.S. Statutory Financial Statements to any person or entity or the date of such filing, distribution, forwarding, or sending.

-11-

        4.     All documents and communications related to the portion of any AIG Restatement which addresses:

        (i)     the LPT or HSB Transactions; or

        (ii)     the basis for AIG's Restatement of the year 2000 and 2001 general insurance or property & casualty insurance loss reserves.

        5.     All documents and communications concerning anyone's concerns that they were not or had not been provided with accurate or complete information concerning the LPT or HSB Transactions, or concerning the views or inquiries of the Companies' internal or outside auditors, accountants, or counsel as to the adequacy of each of the Companies' internal controls and procedures.

        6.     All documents concerning communications with law enforcement authorities or insurance or other regulators, including but not limited to the Department of Justice, any U.S. Attorneys' Offices, the U.S. Securities and Exchange Commission, the U.S. Postal Inspection Service, the Office of the Attorney General of New York, or the New York State Department of Insurance concerning their respective investigations, including but not limited to:

        (i)     all discussions concerning remedial steps, discipline or termination of employees and officers; modifications to internal policies, procedures, practices, and controls; or potential criminal, civil, or administrative enforcement actions and the resolution of such actions;

        (ii)     copies of all subpoenas or document requests and any correspondence or communication related to the subpoenas or document requests; and

(iii)    copies of all privilege logs or redaction logs produced in response to
any investigation concerning the LPT or HSB Transactions.

7.    All documents and communications concerning knowledge of the LPT
or HSB Transactions (including but not limited to the accounting for it), the decrease in AIG
GAAP loss reserves in the third quarter of 2000, the increase in AIG GAAP loss reserves in the
fourth quarter of 2000, or the increase in AIG GAAP loss reserves in the first quarter of 2001
by any of the following individuals: Maurice "Hank" Greenberg, Christian Milton, Howard
"Howie" Smith, Warren E. Buffett, Ronald E. Ferguson, Richard Napier, Joseph P. Brandon,
Elizabeth "Betsy" Monrad, Tom M. Kellogg, Tad Montross, Lee R. Steeneck, Robert Graham,
James Sabella, Margaret Dennehy, Peter Gerhardt, John Byrne, Christopher P. Garand, Milan
Vukelic, John B. Houldsworth, Philip Garrison, Michael Castelli, Jay Morrow, Annette
Morrill, Ronnie Carroll, Frank Douglas, Vincent Cantwell, Marcy Shamah, Robert Jacobson,
Robert McGowan, Robert Beier, John Blumenstock, Thomas Tizzio, Saul Basch, William
Heckles, Joseph Umansky, David Wessel, Jerry Borelli, Joseph Brescia, Jackie Britt, Anthony
Caruana, Larry Golodner, Bruce Osterman, Alfonso Pisani, Jeff Shattin, or Kenneth Simpson.

8.    All documents concerning all actual, proposed, or contemplated
alteration, destruction, or modification of any documents concerning any of the items listed in
1 through 7 above, including but not limited to all policies and procedures concerning
document preservation, destruction, modification, recycling, or maintenance.

-13-

## CERTIFICATION PURSUANT TO FED. R. EVID. 902(11)

I, _____, am a _____,
　　　　　[name]　　　　　　　　　　　　　　　　　　　　　　[title]

of _____. As such, I am duly authorized custodian of
　　　　　[company]

records. I hereby certify that the attached documents, which are:

[general description]

are records that were made, at or near the time of the occurrence of the matters set forth by, or
from information transmitted by, a person with knowledge of those matters; that such records were
kept in the course of a regularly conducted business activity; that the business activity made such
records as a regular practice; and that such records are [originals] [duplicates of originals].
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　[strike one]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____
　　　　　[City, State]

_____ _____, _____
　　[Date]

_____
　　　　　[signature]

_____
　　　　　[printed name]

-14-

AO89 (Rev. 7/95) Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT

DISTRICT OF     CONNECTICUT

UNITED STATES OF AMERICA

V.

RONALD E. FERGUSON, ET AL.

**SUBPOENA IN A
CRIMINAL CASE**

Case Number:   3:06CR00137 (PCD)

TO:    HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY

☒ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case. This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE<br><br>UNITED STATES DISTRICT COURT<br>141 CHURCH STREET<br>NEW HAVEN, CT 06510* | COURTROOM<br>Hon. Peter C. Dorsey<br>U.S. District Judge<br>DATE AND TIME<br>September 23, 2006 |
| --- | --- |

☒ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See Exhibit A

*Pursuant to the Court's Order, production may be made directly to the issuing attorney indicated below.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
| --- | --- |
| Kevin F. Rowe | |
| (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
Douglas F. Koff, Esq. (phv 01207)
Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY 10281
(212) 504-6372

EXHIBIT A

## I.   **Instructions**

For the purposes of compliance with this Subpoena:

1.      You may have already produced documents responsive to this subpoena in response to requests or subpoenas from the Department of Justice or the U.S. Attorney's Office for the Eastern District of Virginia. To the extent you have done so, you do not need to provide these materials here. However, to the extent that there are additional responsive documents, not already produced to the agencies identified above, you must produce those documents.

2.      You may have already produced documents responsive to this subpoena in response to requests or subpoenas from the Northeast Regional Office of the U.S. Securities & Exchange Commission. To the extent that you have done so, you may satisfy the requirements of this subpoena by identifying the documents already produced by Bates number or other control number. However, to the extent that there are additional responsive documents, not already produced to the agencies identified above, you must produce those documents.

3.      The documents requested herein encompass all documents which are in your possession, custody or control, or in the possession, custody or control of any Hartford Steam Boiler Inspection and Insurance Company ("HSB") affiliate or subsidiary, and are to be produced as they are kept in the usual course of business or organized and labeled to correspond to the numbered paragraphs or categories of particular requests. If there are no documents responsive to a particular numbered paragraph and/or category, so state in writing.

4.      All documents produced from inside the United States are to be accompanied with a certification under Rule 902(11) of the Federal Rules of Evidence,

substantially in the form of the certification attached hereto. All documents produced from outside the United States are to be accompanied with a certification under Title 18, United States Code, section 3505, substantially in the form of the certification attached hereto.

5.    For each responsive document withheld under a claim of privilege, the following information shall be provided:

(a)    whether the document has been previously provided to any outside party in full or in redacted form, including but not limited to the Department of Justice, any U.S. Attorneys' Offices, the U.S. Securities & Exchange Commission, the U.S. Postal Inspection Service, the Federal Bureau of Investigation, the Office of the Attorney General of New York, the New York State Department of Insurance, or parties in a private lawsuit, mediation, or arbitration;

(b)    the nature of the privilege (including work product) that is being claimed and, if applicable, the state rule or law governing such claim;

(c)    the identities of all persons who have or have had access, or purport to have or have had access, to said document;

(d)    the type of document (i.e., letter, memorandum, etc.);

(e)    the general subject matter of the document;

(f)    the date of the document; and

(g)    such information as is sufficient to identify the document including, where appropriate, the document author(s), addressee(s), and where not apparent, the relationship between the author(s) and addressee(s).

6.    All documents produced shall be provided in their entirety notwithstanding the fact that portions thereof may contain information not requested. All interim as well as final versions of the document shall be produced, and all versions or copies

-3-

that are not identical to the original or other produced copy of the document, whether due to handwritten notations, modifications, changes, amendments, revisions or otherwise, shall be produced.

7.     If any requested document has been destroyed or discarded, or is no longer in existence, that document is to be identified by stating:

  (a)     its date of destruction or discard;

  (b)     the manner and reason for its destruction or discard; and

  (c)     the identity of the document's last custodian and of each person responsible for the document's destruction or unavailability.

8.     If any requested document was, but no longer is in your possession, state all circumstances of its disposition and whether any copy is in the possession, custody or control of some other person or corporation and indicate why the document or a copy cannot be produced.

9.     Where anything has been deleted from a document produced:

  (a)     specify the nature of the material deleted;

  (b)     specify the reason(s) for the deletion; and

  (c)     identify the person(s) responsible for the deletion.

10.     If any request herein cannot be complied with in full, it shall be complied with to the extent possible with an explanation as to why full compliance is not possible.

11.     The requests shall be deemed continuing so as to require further and prompt supplemental production if, between the date hereof and the time of hearing and/or trial, any additional documents come into your possession, custody or control or the

-4-

possession, custody or control of your agents or representatives including but not limited to, any attorneys, accountants and advisors.

        12.    All references to the singular shall be deemed to include the plural, and all references to the plural shall be deemed to include the singular.

        13.    All references to masculine gender shall be deemed to include the feminine and the neuter.

## II.   **Definitions**

        Unless otherwise noted, the terms set forth below are defined as follows:

        1.    "Agreement" shall mean any agreement, arrangement, or mutual understanding, whether written or oral, including any and all drafts or amendments, schedules or exhibits, or additional agreements referenced therein or attached thereto.

        2.    "AIG Restatements" means those portions of any American International Group, Inc. ("AIG") financial statements or other AIG filings with the U.S. Securities & Exchange Commission Form, as filed with the U.S. Securities & Exchange Commission at any time in 2005 or 2006, which discuss or relate to changes in accounting to prior years' financial statements or other filings with the U.S. Securities & Exchange Commission.

        3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

        4.    "Any" includes "all" and vice versa.

        5.    "Companies" shall mean AIG, Berkshire Hathaway, Inc. ("Berkshire Hathaway"), General Reinsurance Corp. ("GenRe"), General Re Corp. ("GRN"), Kölnische Ruckversicherungs-Gesellschaft AG ("Cologne Re"), Cologne Reinsurance Company (Dublin)

Limited ("CRD"), HSB, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("NUFIC") and any predecessor, successor, affiliate, subsidiary, or parent thereto, collectively or singly, and their present or former officers, directors, members, employees, agents, representatives, attorneys, consultants, advisors (financial or otherwise), investment bankers, and all other persons (legal or natural) acting or purporting to act on their behalf.

      6.    "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether orally or in writing or by any other means or medium.

      7.    "Concerning" shall mean relating to, referring to, describing, evidencing or constituting.

      8.    "Document" shall have the broadest meaning permitted by the rules of the Court, and should include all documents within your possession, custody, or control or for which you have the right or ability to request, review, or access, including but not limited to all originals, copies (if the originals are not available), non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise), and drafts, whether printed or recorded (through sound, video, or other electronic, magnetic, or digital recording system), or reproduced by hand, and including but not limited to letters, correspondence, telegrams, telexes, agency memoranda, intermediary memoranda, other memoranda, records, summaries of personal conversations or interviews, minutes or records or notes of meetings of conferences, note pads, notebooks, postcards, "Post-It" notes, stenographic notes, opinions, or reports of advisors or consultants, opinions, or reports of experts, projections, financial or statistical statements or compilations, analyses, confirmations, publications, articles, books, pamphlets, manuals, provisions, desk reviews, audits, rate sheets, circulars, microfilm, microfiche, reports, studies, logs, surveys, diaries,

-6-

maps, charts, graphs, bulletins, photostats, speeches, data sheets, pictures, photographs, illustrations, blueprints, films, drawings, plans, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-produced interpretations or transcriptions thereof, electronically transmitted messages ("e-mail") (including any information contained in any computer, even if not yet printed out), voice mail messages, interoffice communications, advertising, packaging, and promotional materials and any other writings, papers, and tangible things of whatever description whatsoever.

        9.     "GAAP" shall mean generally accepted accounting principles.

        10.    "HSB Commutation" shall mean the commutation endorsement and release agreement between GenRe and HSB, executed December 21, 2001, in which GenRe reimbursed HSB by $7.5 million.

        11.    "HSB Transactions" shall mean all reinsurance contracts between HSB and GenRe or any affiliate of GenRe, from 1995 through 2001, including the 13 such contracts that made up the HSB experience account balance that exceeded $30 million, the HSB Commutation, and the NUFIC Retrocession.

        12.    "Including" shall mean including but not limited to.

        13.    "LPT" shall mean the $500 million Loss Portfolio Transfer between CRD and NUFIC that was divided into two tranches of $250 million each in the fourth quarter of 2000 and the first quarter of 2001, as well as any associated transfer of funds, including but not limited to those that took place in 2001 between GenRe, NUFIC, and HSB.

        14.    "NUFIC Retrocession" shall mean the excess of loss retrocessional agreement between GenRe and NUFIC, executed December 28, 2001, in which GenRe paid NUFIC $9.1 million.

15.     "Person" or "persons" shall mean natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

16.     "Underlying Cedents" shall mean the insurers or reinsurers that ceded the Underlying Loss Portfolios to CRD.

17.     "Underlying Loss Portfolios" shall mean any or all of the underlying loss reserve portfolios or other reinsurance agreements that were ceded to NUFIC pursuant to the LPT, defined in the LPT contracts as the "Original Reinsurance Contracts," and detailed in Schedule A annexed thereto, including but not limited to any reinsurance (other than that which was ceded to NUFIC), which was purchased at any time by CRD covering any portion of the liabilities CRD had assumed under such underlying loss reserve portfolios or other reinsurance agreements.

18.     "U.S. GAAP Statements" shall mean any or all financial statements filed in accordance with generally accepted accounting principles, including but not limited to all SEC Form 10-Ks and SEC Form 10-Qs.

19.     "U.S. Statutory Financial Statements" shall mean the quarterly and annual financial reports filed by, or on behalf of, insurance and reinsurance companies with state insurance regulatory authorities.

## III.     Documents Subpoenaed

For the period January 1, 2000 through the present, produce the following:

1.     All documents and communications concerning the LPT or HSB Transactions, including but not limited to:

(i)     all documents and communications concerning the origination, formation, negotiation, structure, documentation, pricing, or accounting of, or any

-8-

actuarial or other risk analysis performed in connection with, the LPT or HSB Transactions;

(ii)     all documents and communications concerning the motives, justifications, or reasons why any of the Companies or their executives sought or agreed to the LPT, HSB Commutation, or NUFIC Retrocession;

(iii)    all documents and communications concerning any connection between the LPT and any of the HSB Transactions;

(iv)    all documents and communications concerning any money owed by GenRe to HSB concerning any of the HSB Transactions;

(v)     all documents and communications concerning any intention or decision by AIG or HSB to commute, cancel, terminate, or novate any of the HSB Transactions, which was expressed or reached independent of any consideration of any aspect of the LPT;

(vi)    all documents and communications concerning the evaluation of risk transfer in the LPT from an accounting, legal, actuarial or insurance standpoint;

(vii)   all documents or communications concerning anyone's knowledge of how any of the Companies accounted for or intended to account for the LPT on a U.S. or European GAAP or statutory accounting basis, or how any of the Companies advised anyone they accounted for or intended to account for the LPT on a U.S. or European GAAP or statutory accounting basis;

(viii)  all documents and communications concerning the applicability of any part of FAS 113, or SSAP 62 to the LPT;

-9-

(ix)     all documents and communications concerning the materiality of the LPT for purposes of reserve analysis, audit planning, audit testing, U.S. or European GAAP or statutory accounting, or securities laws or regulations;

(x)     all documents and communications concerning fees, premiums, or similar compensation or consideration in connection with the LPT or HSB Transactions, including but not limited to the flow or payment of such amounts, rebates, refunds, or return of such amounts, or other benefits (including but not limited to participation on favorable terms or increased percentage in other transactions) in connection with the LPT or HSB Transactions; and

(xi)     all documents and communications concerning any losses related to the LPT.

2.     All documents and communications concerning the Underlying Loss Portfolios, including but not limited to:

(i)     all documents and communications concerning the origination, formation, negotiation, structure, documentation, pricing or accounting of, or any actuarial or other risk analysis performed in connection with, the Underlying Loss Portfolios;

(ii)     all documents and communications concerning the flow of funds, fees, premiums, other consideration or benefits or losses related to the Underlying Loss Portfolios;

(iii)     all communications, emails, and correspondence with Underlying Cedents;

(iv)     all documents and communications concerning the underwriting, claims, and accounting files for or related to the Underlying Loss Portfolios;

-10-

(v)     all documents and communications concerning reserves, (including but not limited to any summary or analysis of reserves), and risk transfer (including but not limited to any summary or analysis or risk transfer) for the Underlying Loss Portfolios; and

(vi)    all documents and communications concerning the actual development (adverse or favorable) of the loss reserves associated with the Underlying Loss Portfolios (from the date of each Underlying Loss Portfolio's inception through the present.)

3.     All documents and communications concerning the disclosure of, reference to, or mention of the HSB Transactions in any document filed or to be filed under either the federal securities laws or state insurance laws, rules, and regulations, including but not limited to:

(i)     all documents and communications concerning the effects of any disclosures of the HSB Transactions on any line item in either the U.S. GAAP Statements or U.S. Statutory Financial Statements and supporting schedules;

(ii)    all communications concerning the HSB Transactions with the U.S. Securities & Exchange Commission, the Financial Accounting Standards Board, the National Association of Securities Dealers, the National Association of Insurance Commissioners, the New York Stock Exchange, state insurance regulatory authorities and any rating agencies; and

(iii)   all documents concerning the filing, distribution, forwarding, or sending of U.S. Statutory Financial Statements to any person or entity or the date of such filing, distribution, forwarding, or sending.

-11-

4.     All documents and communications concerning the portion of any AIG Restatement which addresses:

     (i)     the LPT or HSB Transactions; or

     (ii)     the basis for AIG's Restatement of the year 2000 and 2001 general insurance or property & casualty insurance loss reserves.

5.     All documents and communications concerning anyone's concerns that they were not or had not been provided with accurate or complete information concerning the LPT or HSB Transactions, or concerning the views or inquiries of the Companies' internal or outside auditors, accountants, or counsel as to the adequacy of each of the Companies' internal controls and procedures.

6.     All documents concerning communications with law enforcement authorities or insurance or other regulators, including but not limited to the Department of Justice, any U.S. Attorneys' Offices, the U.S. Securities and Exchange Commission, the U.S. Postal Inspection Service, the Office of the Attorney General of New York, or the New York State Department of Insurance concerning their respective investigations, including but not limited to:

     (i)     all discussions concerning remedial steps, discipline or termination of employees and officers; modifications to internal policies, procedures, practices, and controls; or potential criminal, civil, or administrative enforcement actions and the resolution of such actions;

     (ii)     copies of all subpoenas or document requests and any correspondence or communication related to the subpoenas or document requests; and

-12-

(iii)    copies of all privilege logs or redaction logs produced in response to any investigation concerning the LPT or HSB Transactions.

7.    All documents and communications concerning knowledge of the LPT or HSB Transactions (including but not limited to the accounting for them), the decrease in AIG GAAP loss reserves in the third quarter of 2000, the increase in AIG GAAP loss reserves in the fourth quarter of 2000, or the increase in AIG GAAP loss reserves in the first quarter of 2001 by any of the following individuals: Maurice "Hank" Greenberg, Christian Milton, Howard "Howie" Smith, Warren E. Buffett, Ronald E. Ferguson, Richard Napier, Joseph P. Brandon, Elizabeth "Betsy" Monrad, Tom M. Kellogg, Tad Montross, Lee R. Steeneck, Robert Graham, James Sabella, Margaret Dennehy, Peter Gerhardt, John Byrne, Christopher P. Garand, Milan Vukelic, John B. Houldsworth, Phillip Garrison, Michael Castelli, Jay Morrow, Annette Morrill, Ronnie Carroll, Frank Douglas, Vincent Cantwell, Marcy Shamah, Robert Jacobson, Robert McGowan, Robert Beier, John Blumenstock, Thomas Tizzio, Saul Basch, William Heckles, Joseph Umansky, David Wessel, Jerry Borelli, Joseph Brescia, Jackie Britt, Anthony Caruana, Larry Golodner, Bruce Osterman, Alfonso Pisani, Jeff Shattin, or Kenneth Simpson.

8.    All documents concerning all actual, proposed, or contemplated alteration, destruction, or modification of any documents concerning any of the items listed in 1 through 7 above, including but not limited to all policies and procedures concerning document preservation, destruction, modification, recycling, or maintenance.

-13-

## CERTIFICATION PURSUANT TO FED. R. EVID. 902(11)

I, _____, am a _____,
        [name]                                     [title]

of _____. As such, I am duly authorized custodian of
        [company]

records. I hereby certify that the attached documents, which are:

[general description]

are records that were made, at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; that such records were kept in the course of a regularly conducted business activity; that the business activity made such records as a regular practice; and that such records are [originals] [duplicates of originals].
                                                                                       [strike one]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____
        [City, State]

_____
    [Date]

_____
                                     [signature]

_____
                                     [printed name]